| | |
|---|---|
| **ANDREW TROY RUSHING,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.  BACKGROUND**

On February 20, 2018, Petitioner Andrew Troy Rushing ("Petitioner") was charged in a Bill of Indictment with one count of methamphetamine trafficking conspiracy involving 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 84(b)(1)(A), and 846 (Count One); and two counts of aiding and abetting the possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 2 (Counts Four and Five). [CR Doc. 1: Bill of Indictment].

The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Count One and the Government agreed to dismiss Counts Four and Five. [CR Doc. 25: Plea

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:19-cv-00598-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:18-cr-00062-MOC-DSC-1.

Agreement]. The plea agreement stated that Petitioner was aware that Count One carried a minimum term of imprisonment of 10 years. [Id. at ¶ 5]. The plea agreement also set forth the parties' agreement to jointly recommend, pursuant to Rule 11(C)(1)(B) of the Federal Rules of Criminal Procedure, in pertinent part, the following:

> b. The amount of mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, that was known to or reasonably foreseeable by the [Petitioner] (including relevant conduct) was 580.64 grams for a Base Offense Level of 30.

[Id. at ¶ 8].

In the plea agreement, Petitioner stipulated that there was a factual basis for his guilty plea. He also stipulated that he had read and understood the factual basis that was filed with his plea agreement and that the Court and the United States Probation office may use it, without objection by Petitioner, to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a). [Id. at ¶ 15]. Petitioner agreed to waive the right to contest his conviction and sentence on direct appeal or in any post-conviction proceeding, except as to claims of ineffective assistance or prosecutorial misconduct. [Id. at ¶ 20]. The factual basis provided as follows:

> From in or about June 2017 through in or about September, 2017, [Petitioner] willfully entered into an agreement with other persons to distribute and possess with intent to distribute five hundred (500) grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in Union County, within the Western District of North Carolina.

[Doc. 24 at 1: Factual Basis].

At the plea hearing, Petitioner testified that he had discussed the Indictment with his attorney and that he understood the charges and any maximum and minimum penalties on conviction. [CR Doc. 26 at ¶¶ 8-9: Acceptance and Entry of Guilty Plea]. Petitioner affirmed that

he was, in fact, guilty of the charges to which he was pleading guilty. [Id. at ¶ 24]. The terms of the plea agreement were reviewed, and Petitioner attested to his understanding of and agreement to those terms. [Id. at ¶¶ 25-26]. Petitioner also testified that he had spoken with his attorney about how the U.S. Sentencing Guidelines might apply to Petitioner's case and that he understood that the district judge would not be able to determine the applicable guideline range until after Petitioner's presentence report was prepared and Petitioner had had an opportunity to comment on it. [Id. at ¶¶ 13-14]. Petitioner further testified that he understood that if his sentence is more severe than he expects or if the Court does not accept the Government's sentencing recommendation, Petitioner is still bound by his plea and cannot withdraw it. [Id. at ¶ 17].

Further, Petitioner affirmed having read, understood, and agreed with the factual basis that had been filed in his case and testified that no one had "threatened, intimidated or forced" him to plead guilty. [Id. at ¶¶ 30-32]. Petitioner testified that he was satisfied with the services of his attorney and declined the opportunity to say anything regarding those services. [Id. at ¶¶ 35-36]. Finally, Petitioner testified that he had heard and understood all parts of the plea proceedings and still wished to plead guilty. [Id. at ¶ 37]. The Court then found that Petitioner's guilty plea was knowingly and voluntarily made and accepted Petitioner's plea. [Id. at p. 4].

Petitioner was sentenced on November 5, 2018. Before the sentencing hearing, a probation officer prepared a Presentence Investigation Report (PSR). [CR Doc. 33: PSR]. The probation officer recommended a base offense level of 30 based on a drug quantity of at least 500 grams but less than 1.5 kilograms, which was reduced three levels for acceptance of responsibility, which yielded a total offense level of 27. [Id. at ¶¶ 23, 30-32]. Together with a criminal history category of III, the recommended guidelines range was 87 to 108 months' imprisonment, but because the statutory minimum term under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) was ten years, the

guideline term was 120 months. [Id. at ¶¶ 48, 81, 82 (citing U.S.S.G. §5G1.1(b)]. The Court adopted the PSR without modification, sentencing Petitioner to a term of imprisonment of 120 months. [CR Doc. 38 at 2: Judgment; CR Doc. 39: Statement of Reasons]. Judgment on Petitioner's conviction was entered on November 9, 2018. [CR Doc. 38]. Petitioner did not directly appeal his conviction or sentence.

Petitioner timely filed the instant motion to vacate under 28 U.S.C. § 2255. [CV Doc. 1]. He argues that his attorney was ineffective in advising Petitioner to accept the Government's plea offer and in advising Petitioner on the law. [Id. at 4]. Specifically, Petitioner contends that his attorney advised him to accept the drug quantity of 580 grams, which included Petitioner's and his co-conspirator's combined personal use amount of 90 to 120 grams, because "[the drug amount does] not matter" and "if [Petitioner] did not accept the government's figure, [he] would end up with a sentence of 242 months." [CV Doc. 1-1 at ¶ 10]. Petitioner also argues that his attorney "made it clear to [him] that personal use amounts would not work to reduce the overall amount that was involved in the conspiracy to distribute." [Id. at 4]. Petitioner asks the Court "to reform [his] plea agreement to an amount of drug[s] less than 500 grams, and to provide a new sentencing hearing," where "[his] sentence would be determined by the sentencing guidelines, and not by the statutory mandatory minimum of ten years." [CV Doc. 1 at 12; CV Doc. 1-1 at 4]. The Government timely responded to Petitioner's motion to vacate on the Court's initial screening order. [CV Docs. 2, 3].

This matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

4

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill

v. Lockhart, 474 U.S. 52, 59 (1985)).  The petitioner's "subjective preferences" are not dispositive, but rather the test is "whether proceeding to trial would have been objectively reasonable in light of all of the facts," United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), and whether the petitioner has shown that there is "contemporaneous evidence" supporting his expressed preferences, Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy."  United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea."  United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010).  Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea.  See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).  A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Petitioner contends that his attorney was ineffective for advising him to take the Government's plea offer, which included Petitioner's agreement that 580.64 grams of methamphetamine was reasonably foreseeable to Petitioner and to a base offense level of 30, because personal use amounts did not matter. [CV Doc. 1-1 at 2, 4]. Petitioner further claims that he accepted the plea offer based on this advice. [Id. at 2].

Petitioner's argument is not well taken. "[A] defendant convicted of conspiring to distribute drugs is not entitled to exclude a personal use amount from the total quantity of drugs involved in the conspiracy." United States v. Iglesias, 535 F.3d 150, 160 (3rd Cir. 2008), cert. denied, 129 S. Ct. 2813 (2009) ("Nothing in the Guidelines suggests that drugs a defendant earmarks for his personal use should be deducted from the total quantity involved in the conspiracy" and noting every circuit to have addressed the issue has held that the entire quantity is relevant conduct). Although personal use quantities may be deducted from distribution offenses, the amount of drugs involved in a conspiracy is "unaffected" by the use a defendant makes of the drugs. Id. Because Petitioner had no lawful basis to possess methamphetamine, all quantities involved in the conspiracy were unlawful. As such, he was accountable for all methamphetamine with which he was personally involved and which was reasonably foreseeable to him. See U.S.S.G. §1B1.1(a)(1)(B); United States v. Bell, 667 F.3d 431, 442 (4th Cir. 2011) (where drugs are not legally obtained or possessed, all reasonably foreseeable drug quantities within the scope of a defendant's criminal activity are considered relevant conduct). Petitioner, therefore, was responsible for the total amount of methamphetamine that he acquired during the conspiracy, including the amount he contends was for personal use. Accordingly, because his attorney's advice regarding the drug amount was certainly within the wide range of reasonable professional assistance, Petitioner has not shown deficient performance. See Strickland, 466 U.S. at 689.

7

Furthermore, Petitioner's argument is belied by his testimony at the plea hearing. At the plea hearing, Petitioner testified that he understood the charges and penalties against him, was guilty of those charges, that he had reviewed, understood, and agreed with the terms of the plea agreement, that he had spoken with his attorney about how the U.S. Sentencing Guidelines might apply to Petitioner's case, that he had read and agreed with the factual basis, that no one had threatened, intimidated, or forced him to plead guilty, and that he was satisfied with the services of his attorney. Because Petitioner's claim contradicts his sworn testimony at the plea hearing, it is without merit. Lemaster, 403 F.3d at 221-22.

Even if Petitioner could show that his counsel's performance was deficient, he has not and cannot show prejudice. Petitioner does not show a reasonable probability that but for his attorney's advice he would have proceeded to trial, nor that such a decision would be objectively reasonable. See Meyer, 506 F.3d at 369; Fugit, 703 F.3d at 260. To be sure, Petitioner, even now, seeks only a reduction in his sentence and does not request a trial. Petitioner, therefore, has not shown deficient performance or prejudice and his claim of ineffective assistance of counsel will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 Motion to Vacate, including Petitioner's request for an evidentiary hearing.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of

appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: November 9, 2020

Max O. Cogburn Jr
United States District Judge